## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SEAN MINDER, JASON BOWLES, BRANDY MCGOUGH, JULIUS YEARGIN, BERT GIBBONS, RAY RODGERS, MICHAEL MITCHELL, MARY CHURCHILL, CHAD SAVOURE, JEFF WILSON, SHARON CATHERS, DAVID KIRK, JR., DAVID SNELL, PHILLIP STOTTS, CARL IZZI, MARK ASQUINO, CHARLES MEDFORD, JR., ANGEL A. MIRANDA, ANDREA ZEMAN, TYLER HOLZER, and ROGER BERNIER, on behalf of themselves and all others similarly situated, | Case No. 21-cv-11563 <br><br> CLASS ACTION COMPLAINT <br><br> DEMAND FOR JURY TRIAL |
| *Plaintiffs*, | |
| v. | |
| KONINKLIJKE PHILIPS N.V.; PHILIPS NORTH AMERICA LLC; and PHILIPS RS NORTH AMERICA LLC; | |
| *Defendants*. | |

Plaintiffs Sean Minder ("Plaintiff Minder"), Jason Bowles ("Plaintiff Bowles"), Brandy McGough ("Plaintiff McGough"), Julius Yeargin ("Plaintiff Yeargin"), Bert Gibbons ("Plaintiff Gibbons"), Hon. Ray Rodgers ("Plaintiff Rodgers"), Michael Mitchell ("Plaintiff Mitchell"), Mary Churchill ("Plaintiff Churchill"), Chad Savoure ("Plaintiff Savoure"), Jeff Wilson ("Plaintiff Wilson"), Sharon Cathers ("Plaintiff Cathers"), David Kirk, Jr. ("Plaintiff Kirk"), David Snell ("Plaintiff Snell"), Phillip Stotts ("Plaintiff Stotts"), Carl Izzi ("Plaintiff Izzi"), Amb. Mark Asquino ("Plaintiff Asquino"), Charles Medford, Jr. ("Plaintiff Medford"), Angela A. Miranda ("Plaintiff Miranda"), Andrea Zeman ("Plaintiff Zeman"), Tyler Holzer ("Plaintiff Holzer"), and Roger Bernier ("Plaintiff Bernier") (collectively, "Plaintiffs"), themselves and the class and subclasses of all others similarly situated as defined below, for their complaint against

defendants Koninklijke Philips N.V. ("Royal Philips"), Philips North America LLC ("Philips NA"), and Philips RS North America LLC ("Philips RS") (collectively, Royal Philips, Philips NA, and Philips RS are "Philips" or the "Defendants"), allege the following based on (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

## INTRODUCTION

1.      Plaintiffs bring this action on behalf of themselves and a proposed class and subclasses of purchasers of Philips Bi-Level Positive Airway Pressure ("BiPAP"), Continuous Positive Airway Pressure ("CPAP"), and mechanical ventilator devices, which contain polyester-based polyurethane ("PE-PUR") sound abatement foam ("PE-PUR Foam").

2.      On April 26, 2021, Philips disclosed it had determined that there were risks that the PE-PUR Foam used in certain devices manufactured by Philips may degrade under certain circumstances.  On June 14, 2021, Philips issued a recall (the "Recall") of devices containing PE-PUR Foam, noting that Philips had determined that the PE-PUR Foam was at risk for degradation into particles which may enter the device's pathway and be ingested or inhaled by users of devices which contain PE-PUR Foam, as well as off-gassing certain chemicals.  Philips recommended that patients using Philips BiPAP and CPAP devices immediately discontinue their use of their devices.

3.      On July 22, 2021, the United States Food and Drug Administration classified the recall of Philips devices containing PE-PUR Foam as a Class 1 recall, the most serious type of recall reserved for recalls of devices that may cause serious injuries or death.

4.      Plaintiffs all owned or leased Philips CPAP, BiPAP, or mechanical ventilator devices prior to June 14, 2021. Plaintiffs subsequently learned that their CPAP, BiPAP, or mechanical ventilator devices had been recalled by Philips due to the presence of a dangerous PE-PUR Foam that could cause them to suffer from adverse health effects, including, *inter alia*,

cancer. Plaintiffs have been advised by Philips to discontinue use of their devices. Plaintiffs must now spend a substantial amount of time and incur substantial expenses to replace the device.

5.      Plaintiffs seek to recover damages based on, *inter alia*, Philips' negligence, breach of contract, breach of express warranty, breach of implied warranties, and breaches of various state consumer protection laws in connection with its manufacture, marketing and sales of devices containing PE-PUR Foam and the need for ongoing medical monitoring on behalf of themselves and the proposed Class and Subclasses.

## **PARTIES**

6.      Plaintiff Sean Minder is a citizen of the State of Alaska.

7.      Plaintiff Jason Bowles is a citizen of the State of Arkansas.

8.      Plaintiff Brandy McGough of is citizen of the State of Arkansas.

9.      Plaintiff Julius Yeargin is a citizen of the State of Arkansas

10.     Plaintiff Bert Gibbons is a citizen of the State of Delaware.

11.     Plaintiff Hon. Ray Rodgers is a citizen of the State of Florida.

12.     Plaintiff Michael Mitchell is a citizen of the State of Hawaii.

13.     Plaintiff Mary Churchill is a citizen of the State of Idaho.

14.     Plaintiff Chad Savoure is a citizen of the State of Idaho.

15.     Plaintiff Jeff Wilson is a citizen of the State of Iowa.

16.     Plaintiff Sharon Cathers is a citizen of the State of Kansas.

17.     Plaintiff David Kirk, Jr. is a citizen of the State of Maine.

18.     Plaintiff David Snell is a citizen of the State of Mississippi.

19.     Plaintiff Phillip Stotts is a citizen of the State of Missouri.

20.     Plaintiff Carl Izzi is a citizen of the State of New Hampshire.

21.    Plaintiff Amb. Mark Asquino is a citizen of the State of New Mexico.

22.    Plaintiff Charles Medford, Jr. is a citizen of the State of North Carolina.

23.    Plaintiff Angel A. Miranda is a citizen of Puerto Rico.

24.    Plaintiff Andrea Zeman is a citizen of the State of South Carolina.

25.    Plaintiff Tyler Holzer is a citizen of the State of Utah.

26.    Plaintiff Roger Bernier is a citizen of the State of Vermont.

27.    Defendant Koninklijke Philips N.V. ("Royal Philips") is a Dutch multinational corporation with its principal place of business located in Amsterdam, Netherlands. Royal Philips is the parent company of Philips NA and Philips RS.

28.    Defendant Philips North America LLC is a Delaware corporation with its principal place of business located at 222 Jacobs Street, Floor 3, Cambridge, Massachusetts 02141. Philips North America is a wholly-owned subsidiary of Koninklijke Philips N.V. Upon information and belief, Philips NA manages the operation of Royal Philips' various lines of business, including Philips RS, in North America.

29.    Defendant Philips RS North America LLC ("Philips RS") is a Delaware corporation with its principal place of business located at 6501 Living Place, Pittsburgh, Pennsylvania 15296. Philips RS was formerly operated under the business name Respironics, Inc. ("Respironics"). Royal Philips acquired Respironics in 2008.[1]

---

[1]    *Philips announces completion of tender offer to acquire Respironics*, WEB WIRE, https://www.webwire.com/ViewPressRel.asp?aId=61199 (accessed June 17, 2021).

## JURISDICTION AND VENUE

30.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this case is a class action where the aggregate claims of all members of the proposed Classes exceed $5,000,000.00, exclusive of interest and costs, and the Plaintiffs and most members of the proposed Classes are citizens of a state different from Defendants.

31.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391(b) and (c) and 18 U.S.C. §1965, because Defendants transact business in, are found in, and/or have agents in this District, and because some of the actions giving rise to this complaint took place within this District.

32.     The Court has personal jurisdiction over the Defendants. Defendants transacted business, maintained substantial contacts, and/or committed overt acts in furtherance of the illegal scheme and conspiracy throughout the United States, including in this District. The scheme and conspiracy have been directed at, and have had the intended effect of, causing injury to persons residing in, located in, or doing business throughout the United States, including in this District.

## FACTUAL BACKGROUND

### I.     Continuous Positive Airway Pressure Therapy

33.     Continuous Positive Airway Pressure ("CPAP") therapy is a common nonsurgical treatment primarily used to treat sleep apnea. CPAP therapy typically involves the use of a nasal or facemask device, and a CPAP device helps individuals breathe by increasing the air pressure in an individual's throat.

34.     Sleep Apnea is a common sleep disorder characterized by repeated interruptions in breathing throughout an individual's sleep cycle. These interruptions, called "apneas," are caused when the soft tissue in an individual's airway collapses. The airway collapse prevents oxygen from

reaching the individual's lungs which can cause a buildup of carbon dioxide. If the individual's brain senses the buildup of carbon dioxide, it will briefly rouse the individual from sleep so that the individual's airway can reopen. Often these interruptions are so brief that the individual will not remember. Despite the brevity of the interruptions, the sleep cycle disruption caused by sleep apnea can dramatically impact a person's lifestyle, including negatively impacting energy, mental performance, and long-term health. CPAP therapy helps treat sleep apnea by preventing the person's airway from collapsing while breathing during sleep cycles, which can help prevent interruptions in breathing.

## II.     Bi-Level Positive Airway Pressure Therapy

35.     Bi-Level Positive Airway Pressure ("BiPAP") therapy is a common alternative to CPAP therapy for treating sleep apnea.  Similar to CPAP therapy, BiPAP therapy is nonsurgical and involves the use of a nasal or facemask device to maintain air pressure in an individual's airway. BiPAP is distinguishable from CPAP therapy, however, because BiPAP devices deliver two alternating levels - inspiratory and expiratory - of pressurized air into a person's airway, rather than the single continuous level of pressurized air delivered by a CPAP device.  The inspiratory positive airway pressure assists a person as a breath is taken in.  Conversely, the expiratory positive airway pressure is applied to allow a person to comfortably breathe out. BiPAP devices deliver one level of pressurize air (the inspiratory positive level) to assist as a person inhales, and another level (the expiratory level) as a person exhales.

### III.    <u>Mechanical Ventilation</u>

36.    Mechanical ventilation is a treatment to help a person breathe when they find it difficult or are unable to breathe on their own. A mechanical ventilator pushes airflow into the patient's lungs to help them breathe. Mechanical ventilation may be invasive ventilation with a tube inserted into the patient's airway, performed in the intensive care unit in the hospital or a long-term institutional setting. Non-invasive ventilation can be used at home by people with respiratory difficulties.

### <u>SUBSTANTIVE ALLEGATIONS</u>

37.    Philips developed, marketed, and sold a lineup of CPAP and BiPAP respirator devices under its "Sleep & Respiratory Care" portfolio designed to assist individuals with a number of sleep, breathing, and respiratory conditions, including sleep apnea. Philips' CPAP and BiPAP respirator devices typically cost several hundred, if not thousands of dollars.  Philips has sold millions of these devices in the United States.

### IV.    <u>Philips Sleep & Respiratory Care Devices Were Endangering its Users</u>

38.    On April 26, 2021, as part of its Quarterly Report for Q1 2021, Philips disclosed for the first time, under a section entitled "Regulatory Update," that device user reports had led to a discovery that the type of PE-PUR "sound abatement" foam Philips used to minimize noise in several CPAP and BiPAP respirators posed health risks to its users. Specifically, Philips disclosed that "the [PE-PUR] foam may degrade under certain circumstances, influenced by factors including use of unapproved cleaning methods, such as ozone[], and certain environmental conditions involving high humidity and temperature."[2]

---

[2]    *First Quarter Results*, PHILIPS (Apr. 26 2021), https://www.results.philips.com/publications/q121/downloads/pdf/en/philips-first-quarter-results-2021-report.pdf (accessed June 16, 2021).

39.     Over a month later, on June 14, 2021, Philips announced that it was recalling several models of BiPAP, CPAP, and mechanical ventilator devices "to address identified potential health risks related to the polyester-based polyurethane (PE-PUR) sound abatement foam component in these devices."[3] Specifically, Philips announced that it had determined that the "PE-PUR foam may degrade into particles which may enter the device's air pathway and be ingested or inhaled by the user, and the foam may off-gas certain chemicals."[4] In total, Philips announced that "[b]etween 3 million and 4 million" devices are targeted in the recall.[5]

40.     The list of the devices recalled by Philips (the "Recalled Devices") include:

| Philips CPAP and BiLevel PAP Devices Subject to Recall[6] | |
| --- | --- |
| **Device Name/Model** | **Type** |
| Philips E30 (Emergency Use Authorization) | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips DreamStation ASV | Continuous Ventilator, Non-life Supporting |
| Philips DreamStation ST, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne ASV4 | Continuous Ventilator, Non-life Supporting |
| Philips C Series ASV, S/T, AVAPS | Continuous Ventilator, Non-life Supporting |
| Philips OmniLab Advanced Plus, In-Lab Titration Device | Continuous Ventilator, Non-life Supporting |
| Philips SystemOne (Q Series) | Non-continuous Ventilator |

---

[3]     *Philips issues recall notification to mitigate potential health risks related to the sound abatement foam component in certain sleep and respiratory care devices*, PHILIPS (June 14, 2021), https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210614-philips-issues-recall-notification-to-mitigate-potential-health-risks-related-to-the-sound-abatement-foam-component-in-certain-sleep-and-respiratory-care-devices.html (accessed June 16, 2021).

[4]     *Id.*

[5]     Associated Press, *Philips recalls ventilators, sleep apnea machines due to health risks*, NBC NEWS, https://www.nbcnews.com/business/consumer/philips-recalls-ventilators-sleep-apnea-machines-due-health-risks-n1270725 (accessed June 16, 2021).

[6]     *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS (June 14, 2021), https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

| Philips DreamStation, CPAP, Auto CPAP, BiPAP) | Non-continuous Ventilator |
|---|---|
| Philips DreamStation GO, CPAP, APAP | Non-continuous Ventilator |
| Philips Dorma 400, 500, CPAP | Non-continuous Ventilator |
| Philips REMStar SE Auto, CPAP | Non-continuous Ventilator |

| Philips Mechanical Respirator Devices Subject to Recall[7] | |
|---|---|
| **Philips Device Name/Model** | **Type** |
| Philips Trilogy 100 Ventilator | Continuous Ventilator |
| Philips Trilogy 200 Ventilator | Continuous Ventilator |
| Philips Garbin Plus, Aeris, LifeVent Ventilator | Continuous Ventilator |
| Philips A-Series BiPAP Hybrid A30 | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP V30 Auto Ventilator | Continuous Ventilator, Minimum Ventilatory Support, Facility Use |
| Philips A-Series BiPAP A40 | Continuous Ventilator, Non-life Supporting |
| Philips A-Series BiPAP A30 | Continuous Ventilator, Non-life Supporting |

41.     According to Philips, the PE-PUR Foam used in Recalled Devices puts Recalled Device users at risk of suffering from the following:  "Irritation (skin, eye, and respiratory tract), inflammatory response, headache, asthma, adverse effects to other organs (e.g. kidneys and liver) and toxic carcinogenic affects."[8]  Philips further noted that it had received specific complaints from Recalled Devices users as suffering from "headache[s], upper airway irritation, cough, chest pressure and sinus infection."[9]

---

[7]     *Id.*

[8]     *Id.*

[9]     *Id.*

## V.    The Health Risks Associated with Use of the Recalled Devices Renders Them Worthless

42.    As a result of the health risks associated with the use of the Recalled Devices, together with Defendants' concealment of these risks from the date they were first reported through April 26, 2021, the Recalled Devices have been rendered completely worthless or, at the very least, have been substantially diminished in value.

43.    The information described above, including the now-known health risks, the recall, and the medical advice issued by Philips, have rendered the Recalled Device worthless to patients with sleep and respiratory conditions. Individuals not using life-supporting ventilators must discontinue their use of the Recalled Devices or face health risks as grave as cancer.  If they choose to discontinue use, they must pay for another expensive device in order to receive effective treatment. Individuals using life-supporting ventilators must seek out an alternative before discontinuing their use of the Recalled Devices.

44.    Recognizing this, Philips issued the following advice to patients using any of the Recalled Devices:

- "**For patients using BiLevel PAP and CPAP devices**:  Discontinue use of affected units and consult with physicians to determine the benefits of continuing therapy and potential risks."[10]

- "**For patients using life-sustaining mechanical ventilator devices: <u>DO NOT discontinue or alter prescribed therapy</u>, without consulting physicians to determine appropriate next steps.**"[11]

45.    As a result of the above, Plaintiffs and the Class will have to undertake considerable expense replacing the Recalled Devices.

---

[10]    *Id.* (emphasis in original).

[11]    *Id.* (emphasis in original).

## VI.    **Philips Unreasonably Delayed its Recall**

46.    Philips has not disclosed when it first received reports from users of its Sleep & Respiratory Care devices "regarding the presence of black debris/particles within the airpath circuit (extending from the device outlet, humidifier, tubing, and mask)."[12]  However, given the fact that all Philips Respironics devices manufactured from 2009 to present have been recalled, it is unlikely that Defendants only recently learned of these issues.

47.    Thus, as a result of user reports, Defendants were aware of the degradation of the PE-PUR sound abatement foam used in the Recalled Devices, yet continued to manufacture and sell the Recalled Devices with such awareness for a significant period of time.  During this period, Defendants unreasonably and unjustly profited from the manufacture and sale of the Recalled Devices and unreasonably put users of the Recalled Devices at risk of developing adverse health effects, including cancer.

48.    In fact, it was only after the early April 2021 release of the Philips Respironics DreamStation 2, a breathing device which does not contain the dangerous PE-PUR Foam, that Philips publicly admitted the problems with the Recalled Devices in a regulatory filing. As detailed above, it was not for another seven weeks that Philips officially recalled the Recalled Devices.

---

[12]    *Medical Device recall notification (U.S. only) / field safety notice (International Markets)*, PHILIPS RESPIRONICS https://www.usa.philips.com/healthcare/e/sleep/communications/src-update#section_2 (accessed June 16, 2021).

## VII.    Philips' Recall Provides Little-to-No Relief to Class Members

49.    As part of its announcement of the recall on June 14, 2021, Philips announced that

it would be implementing "a comprehensive repair and replacement program for the affected

devices" as follows:

**Repair and replacement program**

Philips is providing the relevant regulatory agencies with required information related to
the launch and implementation of the projected correction. The company will replace the
current sound abatement foam with a new material and has already begun the
preparations, which include obtaining the relevant regulatory clearances. Philips aims to
address all affected devices in scope of this correction as expeditiously as possible.

As part of the program, the first-generation DreamStation product families will be
modified with a different sound abatement foam and shipped upon receipt of the required
regulatory clearances. Philips' recently launched next-generation CPAP platform,
DreamStation 2, is not affected by the issue. To support the program, Philips is increasing
the production of its DreamStation 2 CPAP devices, that are available in the US and
selected countries in Europe.[13]

50.    As the above language makes clear, Philips did not intend to replace the Recalled

Devices with Philips' newly manufactured DreamStation 2 devices that contain a different foam

and are therefore not affected by the recall (although individuals could always purchase a new

Philips DreamStation 2 on their own), but instead intended to switch out the dangerous PE-PUR

Foam in each Recalled Device. As events have already shown, this is a time-consuming process

that has left, and will continue to leave Recalled Device users without use of their devices for

untold periods of time.

51.    As implemented to date, the "repair and replacement" program has not repaired a

single Recalled Device. Recalled Device users seeking to have their devices repaired or replaced

are asked to register their devices on the Philips website, but are provided only with a registration

---

[13]    *Id.*

number and no information as to when they can expect their Recalled Devices to be repaired. Upon information and belief, Philips has not provided *any* guidance to *anyone* as to when Recalled Devices will be repaired.

52.    It was not until September 1, 2021, over 2 ½ months after officially announcing the recall, that Philips announced it had begun to implement its repair and replacement program.[14] Philips has not provided guidance as to who will receive replacement devices or will have their devices repaired, only stating that some individuals will have their devices "rework[ed]" and that others will have their devices replaced.[15]

### VIII.    Plaintiff Sean Minder

53.    Plaintiff Sean Minder is a citizen and resident of the State of Alaska.

54.    Plaintiff Minder acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

55.    Plaintiff Minder regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

56.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Minder's Recalled Device is now worthless.

57.    Plaintiff Minder therefore seeks a refund of Plaintiff Minder's out of pocket expenses relating to the acquisition and use of Plaintiff Minder's Recalled Device, a non-

---

[14]    *Philips starts repair and replacement program of first-generation DreamStation devices in the US in relation to earlier announced recall notification*, PHILIPS (Sept. 1, 2021), *available at* https://www.philips.com/a-w/about/news/archive/standard/news/press/2021/20210901-philips-starts-repair-and-replacement-program-of-first-generation-dreamstation-devices-in-the-us-in-relation-to-earlier-announced-recall-notification.html.

[15]    *Id.*

13

defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### IX.    Plaintiff Jason Bowles

58.    Plaintiff Jason Bowles is a is a citizen and resident of the State of Arkansas.

59.    Plaintiff Bowles acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

60.    Plaintiff Bowles regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

61.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bowles' Recalled Device is now worthless.

62.    Plaintiff Bowles therefore seeks a refund of Plaintiff Bowles' out of pocket expenses relating to the acquisition and use of Plaintiff Bowles' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### X.    Plaintiff Brandy McGough

63.    Plaintiff Brandy McGough is a citizen and resident of the State of Arkansas.

64.    Plaintiff McGough acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

65.    Plaintiff McGough regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

66.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff McGough's Recalled Device is now worthless.

14

67.     Plaintiff McGough therefore seeks a refund of Plaintiff McGough's out of pocket expenses relating to the acquisition and use of Plaintiff McGough's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XI.     Plaintiff Julius Yeargin

68.     Plaintiff Julius Yeargin is a citizen and resident of the State of Arkansas.

69.     Plaintiff Yeargin acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

70.     Plaintiff Yeargin regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

71.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Yeargin's Recalled Device is now worthless.

72.     Plaintiff Yeargin therefore seeks a refund of Plaintiff Yeargin's out of pocket expenses relating to the acquisition and use of Plaintiff Yeargin's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XII.     Plaintiff Bert Gibbons

73.     Plaintiff Bert Gibbons is a citizen and resident of the State of Delaware.

74.     Plaintiff Gibbons acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

75.     Plaintiff Gibbons regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

76.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Gibbons' Recalled Device is now worthless.

77.     Plaintiff Gibbons therefore seeks a refund of Plaintiff Gibbons' out of pocket expenses relating to the acquisition and use of Plaintiff Gibbons' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XIII.   Plaintiff Michael Mitchell

78.     Plaintiff Michael Mitchell is a citizen and resident of the State of Hawaii.

79.     Plaintiff Mitchell acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

80.     Plaintiff Mitchell regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

81.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Mitchell's Recalled Device is now worthless.

82.     Plaintiff Mitchell therefore seeks a refund of Plaintiff Mitchell's out of pocket expenses relating to the acquisition and use of Plaintiff Mitchell's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XIV.   Plaintiff Mary Churchill

83.     Plaintiff Mary Churchill is a citizen and resident of the State of Idaho.

84.     Plaintiff Churchill acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

85.    Plaintiff Churchill regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

86.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Churchill's Recalled Device is now worthless.

87.    Plaintiff Churchill therefore seeks a refund of Plaintiff Churchill's out of pocket expenses relating to the acquisition and use of Plaintiff Churchill's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XV.    Plaintiff Chad Savoure

88.    Plaintiff Chad Savoure is a citizen and resident of the State of Idaho.

89.    Plaintiff Savoure acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

90.    Plaintiff Savoure regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

91.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Savoure's Recalled Device is now worthless.

92.    Plaintiff Savoure therefore seeks a refund of Plaintiff Savoure's out of pocket expenses relating to the acquisition and use of Plaintiff Savoure's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XVI.    Plaintiff Jeff Wilson

93.    Plaintiff Jeff Wilson is a citizen and resident of the State of Iowa.

94.     Plaintiff Wilson acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

95.     Plaintiff Wilson regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

96.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Wilson's Recalled Device is now worthless.

97.     Plaintiff Wilson therefore seeks a refund of Plaintiff Wilson's out of pocket expenses relating to the acquisition and use of Plaintiff Wilson's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XVII.  **Plaintiff Sharon Cathers**

98.     Plaintiff Sharon Cathers is a citizen and resident of the State of Kansas.

99.     Plaintiff Cathers acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

100.    Plaintiff Cathers regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

101.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Cathers' Recalled Device is now worthless.

102.    Plaintiff Cathers therefore seeks a refund of Plaintiff Cathers' out of pocket expenses relating to the acquisition and use of Plaintiff Cathers' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

18

XVIII. **Plaintiff David Kirk, Jr.**

103.    Plaintiff David Kirk, Jr. is a citizen and resident of the State of Maine.

104.    Plaintiff Kirk acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

105.    Plaintiff Kirk regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

106.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Kirk's Recalled Device is now worthless.

107.    Plaintiff Kirk therefore seeks a refund of Plaintiff Kirk's out of pocket expenses relating to the acquisition and use of Plaintiff Kirk's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

XIX.    **Plaintiff David Snell**

108.    Plaintiff David Snell is a citizen and resident of the State of Mississippi.

109.    Plaintiff Snell acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

110.    Plaintiff Snell regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

111.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Snell's Recalled Device is now worthless.

112.    Plaintiff Snell therefore seeks a refund of Plaintiff Snell's out of pocket expenses relating to the acquisition and use of Plaintiff Snell's Recalled Device, a non-defective

replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XX.    Plaintiff Phillip Stotts

113.    Plaintiff Phillip Stotts is a citizen and resident of the State of Missouri.

114.    Plaintiff Stotts acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

115.    Plaintiff Stotts regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

116.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Stotts' Recalled Device is now worthless.

117.    Plaintiff Stotts therefore seeks a refund of Plaintiff Stotts' out of pocket expenses relating to the acquisition and use of Plaintiff Stotts' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

### XXI.    Plaintiff Carl Izzi

118.    Plaintiff Carl Izzi is a citizen and resident of the State of New Hampshire.

119.    Plaintiff Izzi acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

120.    Plaintiff Izzi regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

121.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Izzi's Recalled Device is now worthless.

122.     Plaintiff Izzi therefore seeks a refund of Plaintiff Izzi's out of pocket expenses relating to the acquisition and use of Plaintiff Izzi's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXII.   Plaintiff Charles Medford, Jr.

123.     Plaintiff Charles Medford, Jr. is a citizen and resident of the State of North Carolina.

124.     Plaintiff Medford acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

125.     Plaintiff Medford regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

126.     As a result of the health risks associated with the use of Recalled Devices, Plaintiff Medford's Recalled Device is now worthless.

127.     Plaintiff Medford therefore seeks a refund of Plaintiff Medford's out of pocket expenses relating to the acquisition and use of Plaintiff Medford's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXIII. Plaintiff Angel A. Miranda

128.     Plaintiff Angel A. Miranda is a citizen and resident of Puerto Rico.

129.     Plaintiff Miranda acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

130.     Plaintiff Miranda regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

131.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Miranda's Recalled Device is now worthless.

132.    Plaintiff Miranda therefore seeks a refund of Plaintiff Miranda's out of pocket expenses relating to the acquisition and use of Plaintiff Miranda's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXIV. Plaintiff Andrea Zeman

133.    Plaintiff Andrea Zeman is a citizen and resident of the State of South Carolina.

134.    Plaintiff Zeman acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

135.    Plaintiff Zeman regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

136.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Zeman's Recalled Device is now worthless.

137.    Plaintiff Zeman therefore seeks a refund of Plaintiff Zeman's out of pocket expenses relating to the acquisition and use of Plaintiff Zeman's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXV.  Plaintiff Tyler Holzer

138.    Plaintiff Tyler Holzer is a citizen and resident of the State of Utah.

139.    Plaintiff Holzer acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

140.    Plaintiff Holzer regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

141.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Holzer's Recalled Device is now worthless.

142.    Plaintiff Holzer therefore seeks a refund of Plaintiff Holzer's out of pocket expenses relating to the acquisition and use of Plaintiff Holzer's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

**XXVI. <u>Plaintiff Roger Bernier</u>**

143.    Plaintiff Roger Bernier is a citizen and resident of the State of Vermont.

144.    Plaintiff Bernier acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

145.    Plaintiff Bernier regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

146.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Bernier's Recalled Device is now worthless.

147.    Plaintiff Bernier therefore seeks a refund of Plaintiff Bernier's out of pocket expenses relating to the acquisition and use of Plaintiff Bernier's Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXVII.    __Plaintiff Hon. Ray Rodgers__

148.    Plaintiff Hon. Ray Rodgers is a citizen and resident of the State of Florida.

149.    Plaintiff Rodgers acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

150.    Plaintiff Rodgers regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

151.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Rodgers' Recalled Device is now worthless.

152.    Plaintiff Rodgers therefore seeks a refund of Plaintiff Rodgers' out of pocket expenses relating to the acquisition and use of Plaintiff Rodgers' Recalled Device, a non-defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## XXVIII.    __Plaintiff Amb. Mark Asquino__

153.    Plaintiff Amb. Mark Asquino is a citizen and resident of the State of New Mexico.

154.    Plaintiff Asquino acquired a Recalled Device without notice or knowledge of the health risks associated with the use of Recalled Devices.

155.    Plaintiff Asquino regularly used a Recalled Device to treat a medical condition until learning of Philips' recall of the Recalled Devices.

156.    As a result of the health risks associated with the use of Recalled Devices, Plaintiff Asquino's Recalled Device is now worthless.

157.    Plaintiff Asquino therefore seeks a refund of Plaintiff Asquino's out of pocket expenses relating to the acquisition and use of Plaintiff Asquino's Recalled Device, a non-

defective replacement device, damages for costs associated with ongoing medical monitoring, and all other appropriate damages.

## TOLLING AND ESTOPPEL

### I.    DISCOVERY RULE TOLLING

158.    Plaintiffs, the Class, and Subclasses had no way of knowing about Philips' conduct with respect to the health risks associated with the use of the Recalled Devices.

159.    Neither Plaintiffs nor any other members of the Class or Subclasses, through the exercise of reasonable care, could have discovered the conduct by Philips alleged herein. Further, Plaintiffs and members of the Class and Subclasses did not discover and did not know of facts that would have caused a reasonable person to suspect that Philips was engaged in the conduct alleged herein.

160.    For these, reasons, all applicable statutes of limitation have been tolled by the discovery rule with respect to claims asserted by Plaintiffs, the Class, and the Subclasses.

### II.    FRAUDULENT CONCEALMENT TOLLING

161.    By failing to provide immediate notice of the adverse health effects associated with continued use of the Recalled Devices, Philips concealed its conduct and the existence of the claims asserted herein from Plaintiffs and the members of the Class and Subclasses.

162.    Upon information and belief, Philips intended its acts to conceal the facts and claims from Plaintiffs and members of the Classes and Subclasses. Plaintiffs and the members of the Class and Subclasses were unaware of the facts alleged herein without any fault or lack of diligence on their part and could not have reasonably discovered Defendants' conduct. For this reason, any statute of limitations that otherwise may apply to the claims of Plaintiffs or members of the Classes or Subclasses should be tolled.

## CLASS ACTION ALLEGATIONS

163.    Plaintiffs bring this action as a class action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

164.    Plaintiffs seek class certification on behalf of a class defined as follows (the "Class"):

> **NATIONWIDE CLASS:** all persons in the United States who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Class").

165.    Plaintiffs seek certification on behalf of a subclass defined as follows:

> **ALASKA SUBCLASS**: all persons who were or are citizens of the State of Alaska who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Alaska Subclass").

166.    Plaintiffs seek certification on behalf of a subclass defined as follows:

> **ARKANSAS SUBCLASS**: all persons who were or are citizens of the State of Arkansas who, from the beginning of any applicable limitations period through June 14, 2021, purchased one of the Recalled Devices for household or business use, and not for resale (the "Arkansas Subclass").

167.    Plaintiffs seek certification on behalf of a subclass defined as follows:

> **DELAWARE SUBCLASS:** all persons who were or are citizens of the State of Delaware who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Delaware Subclass").

168.    Plaintiffs seek certification on behalf of a subclass defined as follows:

> **FLORIDA SUBCLASS:** all persons who were or are citizens of the State of Florida who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Florida Subclass").

169.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**HAWAII SUBCLASS:**  all persons who were or are citizens of the State of Hawaii who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Hawaii Subclass").

170.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**IDAHO SUBCLASS:** all persons who were or are citizens of the State of Idaho who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Idaho Subclass").

171.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**IOWA SUBCLASS:**  all persons who were or are citizens of the State of Iowa who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Iowa Subclass").

172.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**KANSAS SUBCLASS:**  all persons who were or are citizens of the State of Kansas who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Kansas Subclass").

173.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MAINE SUBCLASS:** all persons who were or are citizens of the State of Maine who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Maine Subclass").

174.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MISSISSIPPI SUBCLASS:** all persons who were or are citizens of the State of Mississippi who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Mississippi Subclass").

175.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**MISSOURI SUBCLASS**: all persons who were or are citizens of the State of Missouri who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Missouri Subclass").

176.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW HAMPSHIRE SUBCLASS**: all persons who were or are citizens of the State of New Hampshire who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Hampshire Subclass").

177.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NEW MEXICO SUBCLASS**: all persons who were or are citizens of the State of New Mexico who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "New Mexico Subclass").

178.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**NORTH CAROLINA SUBCLASS**: all persons who were or are citizens of the State of North Carolina who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "North Carolina Subclass").

179.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**PUERTO RICO SUBCLASS**: all persons who were or are citizens of Puerto Rico who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Puerto Rico class").

180.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**SOUTH CAROLINA SUBCLASS:** all persons who were or are citizens of the State of South Carolina who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "South Carolina Subclass").

181.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**UTAH SUBCLASS**: all persons who were or are citizens of the State of Utah who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Utah Subclass").

182.    Plaintiffs seek certification on behalf of a subclass defined as follows:

**VERMONT SUBCLASS**: all persons who were or are citizens of the State of Vermont who, from the beginning of any applicable limitations period through June 14, 2021, purchased or leased one of the Recalled Devices for household or business use, and not for resale (the "Vermont Subclass").

183.    Plaintiffs reserve the right to modify or refine the definitions of the Class or Subclasses based upon discovery of new information and in order to accommodate any of the Court's manageability concerns.

184.    Excluded from the Class and Subclasses are: (a) any Judge or Magistrate Judge presiding over this action and members of their staff, as well as members of their families; (b) Defendants' and Defendants' predecessors, parents, successors, heirs, assigns, subsidiaries, and any entity in which any Defendants or their parents have a controlling interest, as well as Defendants' current or former employees, agents, officers, and directors; (c) persons who properly execute and file a timely request for exclusion from the Classes or Subclass; (d) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (e) counsel for Plaintiffs  and Defendants; and (f) the legal representatives, successors, and assigns of any such excluded persons.

185.    **Ascertainability**. The proposed Classes and Subclasses are readily ascertainable because they are defined using objective criteria so as to allow class members to determine if they are part of a Class or Subclass.  Further, the Classes and Subclasses can be readily identified through records maintained by Defendants.

186.    **Numerosity (Rule 23(a)(1))**. The Classes and Subclasses are so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class and Subclasses, as herein identified and described, is not known, but sales figures indicate that millions of individuals have purchased the Philips Recalled Devices.

187.    **Commonality (Rule 23(a)(2))**. Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class and Subclass members, including the following:

- whether Defendants owed a duty of care to Plaintiffs and the Classes;

- whether Defendants knew or should have known that the PE-PUR Foam used for sound abatement posed health risks;

- whether Defendants wrongfully represented that the PE-PUR Foam used for sound abatement in the Recalled Devices was safe;

- whether the Recalled Devices retained any value post-recall;

- whether Defendants wrongfully represented that the Recalled Devices were safe to use;

- whether Defendants wrongfully failed to disclose that the PE-PUR Foam used for sound abatement in the Recalled Devices posed health risks to Recalled Device users;

- whether Defendants' representations in advertising, warranties, packaging, and/or labeling were false, deceptive, and misleading;

- whether those representations were likely to deceive a reasonable consumer;

- whether a reasonable consumer would consider the presence, or risk of, health risks as a material fact in purchasing one of the Recalled Devices;

- whether Defendants had knowledge that those representations were false, deceptive, and misleading;

- whether Defendants breached their express warranties;

- whether Defendants breached their implied warranties;

- whether Defendants engaged in unfair trade practices;

- whether Defendants engaged in false advertising;

- whether Defendants' conduct was negligent per se;

- whether Defendants made negligent and/or fraudulent misrepresentations and/or omissions;

- whether Plaintiffs and the members of the Class and Subclasses are entitled to actual, statutory, and punitive damages; and

- whether Plaintiffs and members of the Class and Subclasses are entitled to declaratory and injunctive relief.

188.    **Typicality (Rule 23(a)(3))**. Plaintiffs' claims are typical of the claims of the other members of the proposed Class and Subclasses. Plaintiffs and members of the Class and Subclasses (as applicable) suffered injuries as a result of Philips' wrongful conduct that is uniform across the Class and Subclasses.

189.    **Adequacy (Rule 23(a)(4))**. Plaintiffs have and will continue to fairly and adequately represent and protect the interests of the Class and Subclasses. Plaintiffs have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interest that is antagonistic to those of the Class and Subclasses, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and Subclasses, and they have the

resources to do so. Neither Plaintiffs nor Plaintiffs' counsel have any interest adverse to those of the other members of the Class and Subclasses.

190.     **Substantial Benefits**. This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class and Subclasses is impracticable. The prosecution of separate actions by individual members of the Class and Subclasses would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Classes and Subclasses, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

191.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

192.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants  acted or refused to act on grounds generally applicable to the Classes and Subclasses, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class and Subclasses as a whole.  Plaintiffs reserve the right to revise the foregoing class

allegations and definitions based on facts learned and legal developments following additional investigation, discovery, or otherwise.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**BREACH OF EXPRESS WARRANTY**
**On Behalf of the Nationwide Class or, alternatively, the Subclasses**

193.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

194.    Philips marketed and sold the Recalled Devices into the stream of commerce with the intent that the Recalled Devices would be purchased by Plaintiffs and the Class and Subclasses.

195.    Philips expressly warranted, advertised, and represented to Plaintiffs and the Class and Subclasses that the Recalled Devices were safe and appropriate for human use.

196.    Philips made these express warranties regarding the Recalled Devices quality and fitness for use in writing through its website, advertisements, and marketing materials and on the Recalled Devices' packaging and labels.  These express warranties became part of the basis of the bargain that Plaintiffs and the Class and Subclasses entered into upon purchasing the Recalled Devices.

197.    Philips' advertisements, warranties, and representations were made in connection with the sale of the Recalled Devices to Plaintiffs and the Class and Subclasses.  Plaintiffs and the Class and Subclasses relied on Philips' advertisements, warranties, and representations regarding the Recalled Devices in deciding whether to purchase Philips' products.

198.    Philips' Recalled Devices do not conform to Philips' advertisements, warranties and representations in that they are not safe, healthy, and appropriate for human use.

199.    Philips therefore breached its express warranties by placing Recalled Devices into the stream of commerce and selling them to consumers, when their use had dangerous effects and

was unsafe, rendering these products unfit for their intended use and purpose, and unsafe and unsuitable for consumer use as marketed by Philips. These associated health effects substantially impair the use, value, and safety of Recalled Devices.

200.    Philips was aware, or should have been aware, of the toxic or dangerous health effects of the use of the Recalled Devices, but nowhere on the package labeling or on Philips' websites or other marketing materials did Philips warn Plaintiffs and members of the Class and Subclasses that they were at risk of developing health problems as a result of the dangerous PE-PUR Foam used in the Recalled Devices.

201.    Instead, Philips concealed the dangerous health effects of the PE-PUR Foam used in the Recalled Devices and deceptively represented that these products were safe, healthy, and appropriate for use. Philips thus utterly failed to ensure that the material representations it was making to consumers were true.

202.    The adverse health effects associated with use of the Recalled Devices existed when they left Philips' possession or control and were sold to Plaintiffs and members of the Class and Subclasses. The dangers associated with use of the Recalled Devices were undiscoverable by Plaintiffs and members of the Class and Subclasses at the time of purchase of the Recalled Devices.

203.    As manufacturers, marketers, advertisers, distributors, and sellers of Recalled Devices, Philips had exclusive knowledge and notice of the fact that the Recalled Devices did not conform to the affirmations of fact and promises.

204.    In addition, or in the alternative, to the formation of an express contract, Philips made each of the above-described representations to induce Plaintiffs and members of the Class and Subclasses to rely on such representations.

34

205.    Philips' affirmations of fact and promises were material, and Plaintiffs and members of the Class and Subclasses reasonably relied upon such representations in purchasing the Recalled Devices.

206.    All conditions precedent to Philips' liability for its breach of express warranty have been performed by Plaintiffs or members of the Class or Subclasses.

207.    Affording Philips an opportunity to cure its breaches of written warranties would be unnecessary and futile here. Philips was placed on reasonable notice that the PE-PUR Foam in the Recalled Devices was unsafe from user reports. Philips had ample opportunity either to stop using the PE-PUR Foam or to replace the PE-PUR Foam in the Recalled Devices to make them safe and healthy for use by Plaintiffs and members of the Class and Subclasses, but failed to do so until now.

208.    As a direct and proximate result of Philips' breaches of express warranty, Plaintiffs and members of the Class and Subclasses have been damaged because they did not receive the products as specifically warranted by Philips. Plaintiffs and members of the Class and Subclasses did not receive the benefit of the bargain and suffered damages at the point of sale stemming from their overpayment for the Recalled Devices.

209.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their express warranties and resulting breach.

## SECOND CLAIM FOR RELIEF

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### On Behalf of the Nationwide Class or, alternatively, the Subclasses

210.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

211.    Philips are merchants engaging in the sale of goods to Plaintiffs and the Class and Subclasses.

212.    There was a sale of goods from Philips to Plaintiffs and the Class and Subclasses.

213.    At all times mentioned herein, Philips manufactured or supplied Recalled Devices, and prior to the time the Recalled Devices were purchased by Plaintiffs and the Class and Subclasses, Philips impliedly warranted to them that the Recalled Devices were of merchantable quality, fit for their ordinary use, and conformed to the promises and affirmations of fact made on the Recalled Devices' labels and packaging, including that the Recalled Devices were safe and appropriate for human use.  Plaintiffs and the Class and Subclasses relied on Philips' promises and affirmations of fact when they purchased the Recalled Devices.

214.    Contrary to these representations and warranties, the Recalled Devices were not fit for their ordinary use, and did not conform to Philips' affirmations of fact and promises as use of the Recalled Devices was accompanied by the risk of adverse health effects that do not conform to the packaging.

215.    Philips breached its implied warranties by selling Recalled Devices that failed to conform to the promises or affirmations of fact made on the packaging or label as use of each Recalled Devices was accompanied by the risk of developing adverse health effects that do not conform to the packaging.

216.    Philips was on notice of this breach, as it was made aware of the adverse health effects accompanying use of the Recalled Devices through user reports submitted to Philips.

36

217.    Privity exists because Philips impliedly warranted to Plaintiffs and the Class through the warranting, packaging, advertising, marketing, and labeling that Recalled Devices were natural, and suitable for use to treat health conditions by individuals, and made no mention of the attendant health risks associated with use of the Recalled Devices.

218.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that each Recalled Device they purchased is worth less than the price they paid and that they would not have purchased at all had they known of the attendant health risks associated with the use of each Recalled Device.

219.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available thereunder for Philips' failure to deliver goods conforming to their implied warranties and resulting breach.

## THIRD CLAIM FOR RELIEF

### FRAUDULENT MISREPRESENTATION
### On Behalf of the Nationwide Class or, alternatively, the Subclasses

220.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

221.    Philips falsely represented to Plaintiffs and the Class and Subclasses that the Recalled Devices were safe for human use.

222.    Philips intentionally, knowingly, and recklessly made these misrepresentations to induce Plaintiffs and the Class and Subclasses to purchase Recalled Devices.

223.    Philips knew that its representations about the Recalled Devices were false in that the Recalled Devices contained PE-PUR Foam and were thus at risk of causing adverse health effects to users of the Recalled Devices which does not conform to the products' labels, packaging, advertising, and statements.  Philips knowingly allowed its packaging, labels, advertisements,

promotional materials, and websites to intentionally mislead consumers, such as Plaintiffs and the Class and Subclasses.

224.    Plaintiffs and the Class and Subclasses did in fact rely on these misrepresentations and purchased Recalled Devices detriment.  Given the deceptive manner in which Philips advertised, represented, and otherwise promoted the Recalled Devices, Plaintiffs' and the Class' and Subclasses' reliance on Philips' misrepresentations was justifiable.

225.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks, including cancer, associated with the use of the Recalled Devices that do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

226.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

**FOURTH CLAIM FOR RELIEF**

**FRAUD BY OMISSION**
**On Behalf of Nationwide Class or, alternatively, the Subclasses**

227.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

228.    Philips concealed from and failed to disclose to Plaintiffs and the Class and Subclasses that use of Recalled Devices is accompanied by a risk of adverse health effects that does not conform to the products' labels, packaging, advertising, and statements.

229.    Philips was under a duty to disclose to Plaintiffs and the Class and Subclasses the true safety, quality, characteristics, fitness for use, and suitability of the Recalled Devices because: (1) Philips was in a superior position to know the true state of facts about its products; (2) Philips

38

was in a superior position to know the risks associated with the use of, characteristics of, and suitability of Recalled Devices for use by individuals; and (3) Philips knew that Plaintiffs and the Class and Subclasses could not reasonably have been expected to learn or discover that Recalled Devices were misrepresented in the packaging, labels, advertising, and websites prior to purchasing Recalled Devices.

230.    The facts concealed or not disclosed by Philips to Plaintiffs and the Class and Subclasses were material in that a reasonable consumer would have considered them important when deciding whether to purchase Recalled Devices.

231.    Plaintiffs and the Class and Subclasses justifiably relied on the Philips' omissions to their detriment.  The detriment is evident from the true quality, characteristics, and risk associated with the use of Recalled Devices, which is inferior when compared to how Recalled Devices are advertised and represented by Philips.

232.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known of the health risks associated with the use of the Recalled Devices which do not conform to the Recalled Devices' labels, packaging, advertising, and statements.

233.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## FIFTH CLAIM FOR RELIEF

### NEGLIGENT MISREPRESENTATION
**On Behalf of the Nationwide Class or, alternatively, the Subclasses**

234.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

235.    Philips had a duty to Plaintiffs and the Class and Subclasses to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, distribution, and sale of Recalled Devices.

236.    Philips breached its duty to Plaintiffs and the Class by developing, testing, manufacturing, advertising, marketing, distributing, and selling products to Plaintiffs and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Philips and by failing to promptly remove Recalled Devices from the marketplace or to take other appropriate remedial action upon becoming aware of the health risks of the Recalled Devices.

237.    Philips knew or should have known that the qualities and characteristics of the Recalled Devices were not as advertised or suitable for their intended use and were otherwise not as warranted and represented by Philips.  Specifically, Philips knew or should have known that: (1) the use of Recalled Devices was accompanied by risk of adverse health effects do not conform to the packaging and labeling; (2) the Recalled Devices were adulterated, or at risk of being adulterated, by the PE-PUR Foam; and (3) the Recalled Devices were otherwise not as warranted and represented by Philips.

238.    As a direct and proximate result of Philips' conduct, Plaintiffs and the Class and Subclasses have suffered actual damages in that they purchased Recalled Devices that were worth less than the price they paid and that they would not have purchased at all had they known they contained PE-PUR Foam that could cause users of the Recalled Devices to suffer adverse health effects that do not conform to the products' labels, packaging, advertising, and statements.

239.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available.

## SIXTH CLAIM FOR RELIEF

**MAGNUSION-MOSS FEDERAL WARRANTY ACT**
**15 U.S.C. § 2301, *et seq*., on Behalf of the Nationwide Class or, alternatively the Subclasses**

240.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

241.    The Magnuson-Moss Warranty Act creates a private right of action for any consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under the Act or under a written warranty, implied warranty, or service contract. 15 U.S.C. § 2310(d)(1).

242.    At all relevant times, Defendants were "supplier[s]" of the Recalled Devices within the meaning of 15 U.S.C. § 2301.

243.    At all relevant times, Defendants were "warrantor[s]" within the meaning of 15 U.S.C. § 2302(e).

244.    At all relevant times, the Recalled Devices constituted "consumer products" within the meaning of 15 U.S.C. § 2301.

245.    At all relevant times, Plaintiffs and members of the Class and Subclasses were "consumers" within the meaning of 15 U.S.C. § 2301.

246.    At all relevant times, Defendants were engaged in the sale of consumer products (the Recalled Devices), throughout the United States, including Massachusetts, for use by members of the general public, including Plaintiffs and the members of the Class and Subclasses with the intent that it be used as a breathing device by consumers.

41

247.    At all relevant times, Defendants manufactured the Recalled Devices and placed it in sealed packaging to be opened by the ultimate consumer and used by individuals to treat health conditions.

248.    In so doing, Defendants impliedly warranted that the Recalled Devices sold to Plaintiffs and the Class were fit for the ordinary purpose for which such goods are used, i.e., treating health conditions.

249.    When sold by Defendants, the package was expected to reach the ultimate consumer without substantial change in the condition in which it was sold, and it did, in fact, reach its ultimate consumer without substantial change.

250.    Plaintiffs used Defendants' Recalled Devices to treat a medical condition as intended by Defendants.

251.    The Recalled Devices sold by Defendant were not fit for human use at the time of sale due to the presence of toxic PE-PUR Foam.

252.    Defendants had actual knowledge of its breaches of warranty set forth above as they received numerous customer complaints relating to the PE-PUR Foam's degradation in the Recalled Devices.

253.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and the other members of the Class have suffered damages in the amount of the sales price of the Recalled Devices.

254.    As a result of Defendants' breach of warranty, Plaintiffs and Class members suffered actual damages in that (1) the actual value of the merchandise they received was less than the value of the merchandise they bargained for denying them of the benefit of their

bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

255.    Plaintiffs have not provided Philips with pre-suit notice of the defects giving rise to these Plaintiffs' claims because, pursuant to 15 U.S.C. § 2310(e), Plaintiffs may provide notice on behalf of themselves, the Class, and Subclasses after class certification.

## SEVENTH CLAIM FOR RELIEF

### UNJUST ENRICHMENT
### On Behalf of the Nationwide Class or, alternatively, the Subclasses)

256.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

257.    Plaintiffs and the Class and Subclasses conferred substantial benefits on Philips through their purchase and use of Recalled Devices.  Philips knowingly and willingly accepted and enjoyed these benefits.

258.    Philips either knew or should have known that the payments rendered by Plaintiffs and the Class and Subclasses were given with the expectation that the Recalled Devices would have the qualities, characteristics, and suitability for use represented and warranted by Philips.  As such, it would be inequitable for Philips to retain the benefit of the payments under these circumstances.

259.    Philips' acceptance and retention of these benefits under the circumstances alleged herein make it inequitable for Philips to retain the benefits without payment of the value to Plaintiffs and the Class and Subclasses.

260.    Plaintiffs and the Class and Subclasses are entitled to recover from Philips all amounts wrongfully collected and improperly retained by Philips, plus interest thereon.

261.    Plaintiffs and the Class and Subclasses seek actual damages, injunctive and declaratory relief, attorneys' fees, costs, and any other just and proper relief available under the laws.

## EIGHTH CLAIM FOR RELIEF

### ALASKA UNFAIR TRADE PRATICES AN CONSUMER PROTECTION ACT
### Alaska Stat. §§ 45.50.471, *et seq.* on Behalf of Plaintiff Sean Minder
### and the Alaska Subclass

262.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

263.    Plaintiff Minder brings this Count individually and on behalf of the members of the Alaska Subclass against all Defendants.

264.    The Alaska Unfair Trade Practices and Consumer Protection Act ("Alaska UTPCPA") provides that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce are declared to be unlawful."

265.    The Alaska UTPCPA further provides that (1) fraudulently conveying or transferring goods or services by representing them to be those of another; (2) falsely representing or designating the geographic origin of goods or services; (3) causing a likelihood of confusion or misunderstanding as to the source, sponsorship, or approval, or another person's affiliation, connection, or association with or certification of goods or services; (4) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have; (5) representing that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, secondhand, or seconds; (6) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (7) disparaging the goods, services, or

44

business of another by false or misleading representation of fact; (8) advertising goods or services with intent not to sell them as advertised; (9) advertising goods or services with intent not to supply reasonable expectable public demand, unless the advertisement prominently discloses a limitation of quantity; (10) making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; (11) engaging in any other conduct creating a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages a buyer or a competitor in connection with the sale or advertisement of goods or services; and (12) using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived, or damaged; are unfair or deceptive acts or practices. *See* Alaska Stat. Ann. § 45.50.471.

266.    The Alaska UTPCPA further provides that a person who suffers an ascertainable loss of money or property as a result of another person's act or practice may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. *See* Alaska Stat. Ann. § 45.50.531. Any person who was the victim of the unlawful act, whether or not the person suffered actual damages, may bring an action to obtain an injunction prohibiting a seller or lessor from continuing to engage in an act or practice.

267.    Defendants, by and through their employees, agents, and/or servants, and in connection with its advertising, offering for sale, sale, and/or distribution of services in Alaska, engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above.

268.     The facts that Defendants misrepresented, concealed, suppressed or omitted as alleged above were material, in that such facts are the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to purchase Defendants' Recalled Devices.

269.     Defendants' misrepresentation, concealment, suppression and omission of material facts as alleged above creates a likelihood of deception and has the capacity to deceive a reasonable consumer.

270.     Defendants engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as described in the allegations above with the intent that Plaintiffs and Class members would rely on those deceptive and unfair acts and practices and induce Plaintiffs and Class members to purchase Defendants' Recalled Devices.

271.     Because the characteristics of Defendants' Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the type of product, the value of that product was less than the value of the product would have had the product actually possessed the characteristics that were represented.

272.     Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for the Recalled Devices.

273.     Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Alaska Subclass suffered monetary losses in that (1) the actual value of the product they received was less than the value of the product they bargained for denying them of the benefit of their

bargain; and (2) Plaintiffs and Class members paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

274.    Plaintiffs, the Class, and the Alaska Subclass could not have avoided these injuries. Because Defendants were the sole source of material information that Defendants failed to disclose, Plaintiffs, the Class, and the Alaska Subclass could not have had reason to anticipate the impending harm and thus avoided their injuries.

**NINTH CLAIM FOR RELIEF**

**ARKANSAS DECEPTIVE TRADE PRACTICES ACT**
**Ark. Code Ann. §§ 4-88-101, *et seq.*, on Behalf of Plaintiff Brandy McGough,**
**Plaintiff Julius Yeargin, and the Arkansas Subclass**

275.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

276.    Plaintiff McGough and Plaintiff Yeargin bring this Count individually and on behalf of the Arkansas Subclass.

277.    The Arkansas Deceptive Trade Practices Act prohibits, among other things: (a) deceptive and unconscionable trade practices including, but not limited to, (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, source, sponsorship, approval, or certification of goods or services or as to whether goods are original or new or of a particular standard, quality, grade, style, or model; (2) advertising the goods or services with the intent not to sell them as advertised; (3) engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade; and (b) in connection with the sale or advertisement of any goods or services, (1) the act, use, or employment by a person of any deception, fraud, or false pretense; or (2) the concealment, suppression, or omission of any material fact with intent that others rely upon the concealment, suppression, or omission. *See* Ark. Code Ann. §§ 4-88-101(1-3).

278. Under the Arkansas Deceptive Trade Practices Act, a person who suffers an actual financial loss as a result of his or her reliance on the use of an unlawful practice may bring an action to recover his or her actual financial loss proximately caused by the offense or violation and reasonable attorney's fees.

279. At all relevant times, members of the Arkansas Subclass and Defendants were individuals, organizations, groups, associations, partnerships, or corporations.

280. Defendants willfully engaged in deceptive and unconscionable acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts it intended others to rely upon in connection with the sale and advertisement of the Recalled Devices.

281. Because the characteristics of Defendants' Recalled Devices were not as represented, and those characteristics are material to a reasonable consumer of the type of product, the value of the Recalled Devices was less than the value of the Recalled Devices would have had the Recalled Devices actually possessed the characteristics that were represented. Because the product defect has actually manifested, Plaintiffs have suffered actual damages as a result of Defendants' conduct.

282. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unconscionable because they offend public policy, and were so oppressive that the Arkansas Subclass had little alternative but to submit, which caused consumers substantial injury.

283. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unconscionable in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring they are safe for human use.

48

284.    Plaintiffs relied on Defendants' representations when purchasing Defendants' Recalled Devices.

285.    Plaintiffs, the Class, and the Arkansas Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices.

286.    Instead, as a result of Defendants' misrepresentations, Plaintiffs, the Class, and the Arkansas Subclass suffered actual damages in that (1) the actual value of the products they received was less than the value of the products they bargained for denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Arkansas Subclass paid more than the fair market value of the products they received causing them out-of-pocket damages.

<u>TENTH CLAIM FOR RELIEF</u>

**DELAWARE CONSUMER FRAUD ACT**
**Del. Code Ann. tit. 6, §§ 2511, *et seq*., on Behalf of Plaintiff Bert Gibbons**
**and the Delaware Subclass**

287.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

288.    Plaintiff Bert Gibbons brings this Count individually and on behalf of the Delaware Subclass.

289.    Delaware's Consumer Fraud Act prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby, is an unlawful practice."

290.    At all relevant times, members of the Delaware Subclass and Defendants were each either individuals, corporations, governments, or governmental subdivisions or agencies, statutory trusts, business trusts, estates, trusts, partnerships, unincorporated associations or other legal or commercial entities.

291.    Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Delaware Consumer Fraud Act, Del. Code Ann. tit. 6, § 2511(6)) in violation of Del. Code Ann. tit. 6, § 2513(a), as described in the allegations above.

292.    The Delaware Subclass relied on Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above.

293.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

294.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

295.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Delaware Subclass.

296.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Delaware Subclass had little alternative but to submit, which caused consumers substantial injury.

297.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

298.    The Delaware Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

299.    Plaintiffs, the Class, and the Delaware Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

300.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Delaware Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Delaware Subclass members paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

301.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## ELEVENTH CLAIM FOR RELIEF

### FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### Fla. Stat. §§ 501.201 *et seq.*, on Behalf of Plaintiff Rodgers and the Florida Subclass

302.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

303.    Plaintiff Rodgers and the Florida Subclass are "consumers," as defined by Fla. Stat. § 501.203(7), the Recalled Devices sold by Philips are "goods" within the meaning of FDUTPA, and the transactions at issue constitute "trade or commerce" as defined by FDUTPA.

51

304.    The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. §
501.204. provides that "[u]nfair methods of competition, unconscionable acts or practices, and
unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared
unlawful."

305.    For the reasons discussed herein, Philips violated and continues to violate
FDUTPA by engaging in the herein described unconscionable, deceptive, unfair acts or practices
proscribed by Fla. Stat. § 501.201, *et seq*. Philips' acts and practices, including its material
omissions, described herein, were likely to, and did in fact, deceive and mislead members of the
public, including consumers acting reasonably under the circumstances, to their detriment.

306.    At all times mentioned herein, Philips engaged in trade or commerce in Florida,
as defined by Fla. Stat. § 501.203(8), in that they advertised, offered for sale, sold or distributed
goods or services in Florida and/or engaged in trade or commerce directly or indirectly affecting
the people of Florida.

307.    Philips repeatedly advertised, both on the labels for the Recalled Devices, on its
websites, and through national advertising campaigns, among other items, that the Recalled
Devices were and are safe for use by individuals when in fact they contain an unsafe material,
PE-PUR Foam, which could cause a Recalled Device user to suffer adverse health effects from
use of the Recalled Devices.

308.    Philips' representations and omissions were material because they were likely to
deceive reasonable consumers to induce them to the Recalled Devices without being aware that
the Recalled Devices contained an unsafe material that could cause adverse health effects. As a
direct and proximate result of Philips' unfair and deceptive acts or practices, Plaintiff Rodgers
and the Florida Subclass suffered damages by purchasing the Recalled Devices because they

would not have purchased the Recalled Devices had they known the truth, and they received a product that was worthless because it contains unsafe PE-PUR Foam.

309.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiff Rodgers and the Florida Subclass in the form of the loss or diminishment of value of the Recalled Devices, which allowed Defendants to profit at the expense of Plaintiff Rodgers and the Florida Subclass. The injuries to Plaintiff Rodgers and the Florida Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

310.    Plaintiff Rodgers and the Florida Subclass seek relief for the injuries they have suffered as a result of Philips' unfair and deceptive acts and practices, as provided by Fla. Stat. § 501.211 and applicable law.

## TWELFTH CLAIM FOR RELIEF

### HAWAII UNIFORM DECEPTIVE TRADE PRACTICES ACT
### Haw. Rev. Stat. §§ 480-1, *et seq.* on Behalf of Plaintiff Michael Mitchell
### and the Hawaii Subclass

311.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

312.    Plaintiff Michael Mitchell brings this Count individually and on behalf of the Hawaii Subclass.

313.    Hawaii's Uniform Deceptive Trade Practices Act ("Hawaii UDTPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

314.    Hawaii's UDTPA further provides that any person who is injured in the person's business or property by reason of anything forbidden or declared unlawful by this chapter may sue for damages sustained by the person.

315. At all relevant times, members of the Hawaii Subclass were natural persons who, primarily for personal, family, or household purposes, purchased Defendants' Recalled Devices.

316. At all relevant times, Defendants and the members of the Hawaii Subclass were either individuals, corporations, firms, trusts, partnerships, limited partnerships, limited liability partnerships, limited liability limited partnerships, limited liability companies, and incorporated or unincorporated associations.

317. Defendants willfully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Haw. Rev. Stat. § 480-2 as described in the allegations above.

318. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

319. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

320. Plaintiffs, the Class, and the Hawaii Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

321. Instead, as a result of Defendants' misrepresentations, Plaintiffs, the Class, and the Hawaii Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Hawaii Subclass paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

322.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Hawaii Subclass.

323.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Hawaii Subclass had little alternative but to submit, which caused consumers substantial injury.

324.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer medical devices is responsible for ensuring they are safe for human use.

325.    The Hawaii Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

326.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

### THIRTEENTH CLAIM FOR RELIEF

**IDAHO CONSUMER PRODUCTION ACT**
**Idaho Code Ann. §§ 48-601, *et seq*.), on Behalf of Plaintiff Mary Churchill,**
**Plaintiff Chad Savoure, and the Idaho Subclass**

327.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

328.    Plaintiff Mary Churchill and Plaintiff Chad Savoure each bring this Count individually and on behalf of the Idaho Subclass.

329.    Idaho's Consumer Protection Act ("Idaho CPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade of commerce,"

as well as "any unconscionable method, act or practice in the conduct of trade or commerce." *See* Idaho Code Ann. § 48-603.

330.    Specifically, the Idaho's CPA forbids: (1) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, connection, qualifications or license that he does not have; (2) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; (3) advertising goods or services with intent not to sell them as advertised; (4) engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and (5) engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

331.    The CPA provides that any person who purchases or leases goods or services and suffers any ascertainable loss of money or property as a result of the use by another person of an unfair or deceptive practice bay bring an action to recover actual damages.

332.    At all relevant times, members of the Idaho Subclass and Defendants were either natural people, corporations, trusts, partnerships, incorporated or unincorporated associations, companies, trusts, business entities or any other legal entity.

333.    Defendants willfully engaged in unfair, deceptive, and unconscionable practices in the conduct of trade or commerce as described in the allegations above.

334.    As a result, Defendants' conduct violates several provisions of the Idaho CPA, including but not limited to:

> (a) Section 48-603(5): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins; and

56

(b) Section 48-603(7): Representing goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendants' Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins.

(c) Section 48-603(17): Engaging in any act or practice which is otherwise misleading, false, or deceptive to the consumer—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks from exposure to toxins.

(d) Section 48-603(18): Engaging in any unconscionable method, act or practice in the conduct of trade or commerce. Here, Defendants knew that the Recalled Devices contained PE-PUR Foam, knew PE-PUR Foam in the Recalled Devices was degrading, and knew or reasonably should have known that consumers would want to buy Recalled Devices free of toxic PE-PUR Foam, and knew or reasonable should have known that consumers would not buy Recalled Devices that contains toxic PE-PUR Foam. Nevertheless, Defendants continually marketed the Recalled Devices as safe for consumers to use and unconscionably withheld information from the public about PE-PUR Foam in the Recalled Devices. These actions violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

335.    Defendants' omissions in violation of the Idaho CPA were likely to mislead an ordinary consumer. Plaintiffs and the Idaho Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiffs and the Idaho Subclass also reasonably understood Defendants' omissions to mean that the toxic Recalled Devices was not of substandard quality. If Defendants had disclosed that its Recalled Devices contained toxic PE-PUR Foam dangerous to consumers' health and were of substandard quality, Plaintiffs and the Idaho Subclass would have been aware that the Recalled Devices contained toxic PE-PUR Foam, and Plaintiffs and the Idaho Subclass would not have purchased Defendants' Recalled Devices.

336.    Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

337.    Plaintiffs, the Class, and the Idaho Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

338.    Plaintiffs, the Class, and the Idaho Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

339.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Idaho Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Idaho Subclass paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

340.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

### FOURTEENTH CLAIM FOR RELIEF

**IOWA PRIVATE RIGHT OF ACTION FOR CONSUMER FRAUDS ACT**
**Iowa Code Ann. §§ 714H.1, *et seq.*, on Behalf of Plaintiff Jeff Wilson and the Iowa Subclass**

341.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

342.    Plaintiff Jeff Wilson brings this Count individually and on behalf of the Iowa Subclass.

343.    Iowa's Private Right of Action for Consumer Frauds Act ("Iowa PRACFA") prohibits any "practice or act the person knows or reasonably should know is an unfair practice,

deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for charitable purposes."

344.    The Iowa PRACFA further provides that a consumer who suffers an ascertainable loss of money or property as the result of an unfair or deceptive practice may bring an action to recover actual damages.

345.    At all relevant times, members of the Iowa Subclass were natural persons.

346.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection with trade or commerce in violation of Iowa Code Ann. § 714A.3(1) as described in the allegations above.

347.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

348.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

349.    Plaintiffs, the Class, and the Iowa Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

350.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Iowa Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of

their bargain; and (2) Plaintiffs, the Class, and the Iowa Subclass paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

351.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Iowa Subclass.

352.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they offend public policy, and are so oppressive that the Iowa Subclass had little alternative but to submit, which caused consumers substantial injury.

353.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

354.    The Iowa Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

355.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## FIFTEENTH CLAIM FOR RELIEF

### MASSACHUSETTS CONSUMER PROTECTION ACT
### Mass. Gen. Laws ch. 93, §§1, *et seq.*, on Behalf of the Nationwide Class

356.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

357.    Plaintiffs intend to assert and prosecute claims under the under the Massachusetts Consumer Protection Law, M.G.L.A. ch. 93A §1, *et seq.* ("MCPL") against Defendants. Defendant Philips NA's principal place of business is located in Cambridge, Massachusetts.

Plaintiffs provided noticed pursuant to M.G.L. ch. 93A §9(3) to Defendant Philips NA on September 20, 2021 by mailing a letter via certified mail, return receipt requested and have provided Defendants' counsel of record with an electronic copy via email. This Count provides notice that this Complaint shall be amended to demand all appropriate relief once the statutory period for a response has passed, subject to any response by Defendant Philips NA.

358.    Each Defendant is a "person" as defined by M.G.L.A. 93A §1(a).

359.    Plaintiffs, the Class, and the Massachusetts Subclass are actual or potential consumers of Recalled Devices.

360.    Philips engaged in engaged in deceptive or unfair acts or practices in the in the conduct of any trade or commerce, in violation of M.G.L. 93A §2(a), including but not limited to the following:

(a)    Knowingly or recklessly made a false representation as to the characteristics and use of Recalled Devices, in violation of 93A §2(a);

(b)    Represented that Recalled Devices are safe for use, in violation of 93A §2(a);

(c)    Advertised Recalled Devices with an intent not to sell it as advertised, in violation of 93A §2(a); and

(d)    Failed to disclose the material information that Recalled Devices contained unsafe PE-PUR Foam and that Recalled Devices users were at risk of suffering adverse health effects, in violation of 93A §2(a).

361.    As detailed, *infra*, Philips' deceptive trade practices significantly impacted the public, because there are millions of consumers of Recalled Devices, including Plaintiffs, the Class, and the Massachusetts Subclass.

362.    Philips' representations and omissions were material because they were likely to deceive reasonable consumers to induce them to purchase Recalled Devices without being aware that Recalled Devices were unsafe to use.  As a direct and proximate result of Philips' unfair and

deceptive acts or practices, Plaintiffs, the Class, and the Massachusetts Subclass suffered damages by purchasing Recalled Devices because they would not have purchased Recalled Devices had they known the truth, and they received a product that was worthless because it is unsafe to use.

363.    Philips' deceptive trade practices caused injury in fact and actual damages to Plaintiffs, the Class, and the Massachusetts Subclass in the form of the loss or diminishment of value of Recalled Devices Plaintiffs, the Class, and the Massachusetts Subclass purchased, which allowed Philips to profit at the expense of Plaintiffs, the Class, and the Massachusetts Subclass. The injuries to Plaintiffs, the Class, and the Massachusetts Subclass were to legally protected interests. The gravity of the harm of Philips' actions is significant and there is no corresponding benefit to consumers of such conduct.

364.    Plaintiffs, the Class, and the Massachusetts Subclass seek relief under 93A §9 including, not limited to, compensatory damages, statutory damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

## SIXTEENTH CLAIM FOR RELIEF

### KANSAS CONSUMER PROTECTION ACT
**Kan. Stat. Ann. §§ 50-623, *et seq.*, on Behalf of Sharon Cathers and the Kansas Subclass**

365.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

366.    Plaintiff Sharon Cathers brings this Count individually and on behalf of the Kansas Subclass.

367.    The Kansas Consumer Protection Act ("Kansas CPA") prohibits suppliers from engaging in any deceptive act or practice in connection with a consumer transaction. *See* Kan. Stat. Ann. § 50-626.

368.    Specifically, the Kansas CPA prohibits (1) representations made knowingly or with reason to know that: (a) property or services have sponsorship, approval, accessories,

characteristics, ingredients, uses, benefits or quantities that they do not have; (b) property or services are of particular standard, quality, grade, style or model, if they are of another which differs materially from the representation; (c) property or services has uses, benefits or characteristics unless the supplier relied upon and possesses a reasonable basis for making such representation; or (d) use, benefit or characteristic of property or services has been proven or otherwise substantiated unless the supplier relied upon and possesses the type and amount of proof or substantiation represented to exist; (2) the willful use, in any oral or written representation, of exaggeration, falsehood, innuendo or ambiguity as to a material fact; and (3) the willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact.

369.    The Kansas CPA also provides that no supplier shall engage in any unconscionable act or practice in connection with a consumer transaction.

370.    The Kansas CPA allows a consumer who is aggrieved by a violation of the act to bring a private action for actual damages or a civil penalty not to exceed $10,000 per violation.

371.    At all relevant times, Plaintiffs and the Kansas Subclass were individuals who purchased Defendants' Recalled Devices for personal, family or household purposes.

372.    At all relevant times, Defendants were manufacturers, distributors, dealers, sellers, lessors, assignors, or other persons who, in the ordinary course of business, solicited, engaged in or enforced consumer transactions, whether or not dealing directly with the consumer.

373.    Defendants willfully engaged in deceptive acts and practices in connection with consumer transactions as described in the allegations above.

374.     As a result, Defendants' conduct violates several provisions of the Kansas CPA, including but not limited to:

        (a) Section 50-626(b)(1)(A): Representing, knowingly or with a reason to know, that property or services have sponsorship, approval, accessories, characteristics, ingredients, uses, benefits or quantities that they do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks;

        (b) Section 50-626(b)(1)(D): Representing, knowingly or with a reason to know, that property or services of are a particular standard, quality, grade, style, or model, if they are of another which differs materially from the representation—as above, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

        (c) Section 50-626(b)(3): The willful failure to state a material fact, or the willful concealment, suppression or omission of a material fact—here, Defendants willfully failed to state and concealed its knowledge about the degradation of the toxic PE-PUR Foam in the Recalled Devices, a material fact concerning the health effects of the Recalled Devices.

375.     Plaintiffs, the Class, and the Kansas Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' the Recalled Devices or would have paid less for the Recalled Devices.

376.     Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Kansas Subclass suffered monetary losses in that (1) the actual value of the merchandise they received was less than the value of the merchandise as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Kansas Subclass paid more than the fair market value of the merchandise they received causing them out-of-pocket damages.

377.     Defendants' conduct as alleged above was unfair, including but not limited to:

(a) Section 50-627(b)(1): Defendants took advantage of the inability of the consumer to reasonably protect the consumer's interests because of the consumer's ignorance or similar factor—here, the Defendants had knowledge about the degradation of the PE-PUR Foam in the Recalled Devices, which information:

   i. Defendants received, measured, and analyzed in the regular operation of its business;
   ii. Is directly related to consumers' interest; and
   iii. Is not within the ability of the consumer to reasonably measure and analyze.

(b) Section 50-627(b)(6): Defendants made a misleading statement of opinion on which the consumer was likely to the consumer's detriment—Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks.

378.    Defendants' omissions in violation of the Kansas CPA were likely to mislead an ordinary consumer. Plaintiffs and the Kansas Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiffs and the Kansas Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices was not of substandard quality. If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous their health and were of substandard quality, Plaintiffs and the Kansas Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam and were of substandard quality, and Plaintiffs and the Kansas Subclass would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

379.    Defendants' omissions alleged herein were material in that a reasonable person would attach importance to the information and would be induced to act upon the information in making purchase decisions.

380.    Plaintiffs and the Kansas Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

381.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## SEVENTEENTH CLAIM FOR RELIEF

### MAINE UNFAIR TRADE PRACTICES ACT
### Me. Rev. Stat. Ann. tit. 5, §§ 205-A, *et seq.*, on Behalf of Plaintiff David Kirk, Jr. and the Maine Subclass

382.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

383.    Plaintiff David Kirk, Jr. brings this Count individually and on behalf of the Maine Subclass.

384.    Maine's Unfair Trade Practices Act prohibits any "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."

385.    Maine's Unfair Trade Practices Act further provides that any person who purchases or leases goods, services or property, real or personal, primarily for personal, family or household purposes and thereby suffers any loss of money or property, real or personal, as a result of the use or employment by another person of a unfair or deceptive acts or practices may bring an action for actual damages, restitution and for such other equitable relief, including an injunction, as the court determines to be necessary and proper.

386.    At all relevant times, members of the Maine Subclass and Defendants were either natural persons, corporations, trusts, partnerships, incorporated or unincorporated associations or another legal entity.

387.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Me. Rev. Stat. Ann. tit. 5, § 207 as described in the allegations above.

388.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above occurred in connection with their advertising, offering for sale, sale or distribution of services or property.

389.    Plaintiffs, the Class, and the Maine Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

390.    Instead, as a result of Defendants' misrepresentation, Plaintiffs, the Class, and the Maine Subclass suffered monetary losses in that (1) the actual value of the Recalled Devices they received was less than the value of the Recalled Devices as represented denying them of the benefit of their bargain; and (2) Plaintiffs, the Class, and the Maine Subclass paid more than the fair market value of the Recalled Devices they received causing them out-of-pocket damages.

391.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

392.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Maine Subclass.

393.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Maine Subclass had little alternative but to submit, which caused consumers substantial injury.

394.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair in that they violate the well-established public policy of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

395.     The Maine Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

396.     As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

397.     Plaintiffs provided Defendants with a pre-suit notice in an attempt to resolve these claims pursuant to Me. Rev. Stat. Ann. tit. 5, § 213(1-A), by sending a certified letter containing the basis of Plaintiffs' claims on September 20, 2021 and have provided Defendants' counsel of record of an electronic copy.

## EIGHTEENTH CLAIM FOR RELIEF

### MISSISSIPPI CONSUMER PROTECTION ACT
### Miss. Code Ann. §§ 75-24-1, *et seq.*, on Behalf of Plaintiff David Snell
### and the Mississippi Subclass

398.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

399.     Plaintiff David Snell brings this Count individually and on behalf of the Mississippi Subclass.

400.     At all relevant times, Plaintiffs, the Mississippi Subclass, and Defendants were "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

401.     The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits unfair or deceptive trade practices in or affecting commerce. *See* Miss. Code Ann. § 75-24-5.

402.    Defendants willfully engaged in unfair or deceptive trade practices in or affecting commerce as described in the allegations above.

403.    As a result, Defendants' conduct violates several provisions of the Mississippi CPA, including but not limited to:

> (a) Section 75-24-5(2)(e): Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

> (b) Section 75-24-5(2)(g): Representing goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks.

404.    Defendants' omissions in violation of the Mississippi CPA were likely to mislead an ordinary consumer. Plaintiffs and the Mississippi Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiffs and the Mississippi Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices was not of substandard quality. If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, Plaintiffs and the Mississippi Subclass would have been aware that the Recalled Devices contained a material, PE-PUR, that could degrade and be toxic to their health and were of substandard quality, and Plaintiffs and the Mississippi Subclass would not have purchased Defendants' Recalled Devices.

405.    Plaintiffs and the Mississippi Subclass relied to their detriment on Defendants' omissions in purchasing Recalled Devices.

406.   Pursuant to Miss. Code Ann. § 75-24-15(2), Plaintiffs made a reasonable attempt to resolve their claims by sending written notice by certified mail, return receipt requests to Defendants on September 20, 2021 and provided Defendants' counsel with an electronic copy via email.

## NINETEENTH CLAIM FOR RELIEF

### MISSOURI MERCHANDISING PRACTICES ACT
### Mo. Rev. Stat. Ann. §§ 407.010, *et seq.*, on Behalf of Plaintiff Phillip Stotts and the Missouri Subclass

407.   Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

408.   Plaintiff Phillip Stotts brings this Count individually and on behalf of the Missouri Subclass.

409.   Missouri's Merchandising Practices Act ("Missouri MPA") prohibits any "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce or the solicitation of any funds for any charitable purpose."

410.   At all relevant times, the Missouri Subclass and Defendants were "persons" within the meaning of the Missouri MPA. *See* Mo. Rev. Stat. Ann. § 407.010(5).

411.   Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of Mo. Rev. Stat. Ann. § 407.020 as described in the allegations above.

412.   Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

413.    At all relevant times, Plaintiffs and the Missouri Subclass acted as reasonable consumers would in light of all circumstances.

414.    Defendants' unlawful method, acts, and practices as alleged would cause a reasonable person to enter into the transactions that resulted in damages.

415.    At trial, Plaintiffs will present, both individually and on behalf of the Missouri Subclass, evidence that is sufficiently definitive and objective to allow the loss of individual damages to be calculated with a reasonable degree of certainty.

416.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

417.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the Missouri Subclass.

418.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Missouri Subclass had little alternative but to submit, which caused consumers substantial injury.

419.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violated the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

420.    The Missouri Subclass suffered economic injury as a direct and proximate result of Defendants' conduct.

421.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTIETH CLAIM FOR RELIEF

### NEW MEXICO UNFAIR PRACTICES ACT
### N.M. Stat. Ann. §§ 57-12-1, *et seq.* on Behalf of Plaintiff Amb. Mark Asquino and the New Mexico Subclass

422.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

423.    Plaintiff Amb. Mark Asquino brings this claim individually and on behalf of the New Mexico Subclass.

424.    New Mexico's Unfair Practices Act ("New Mexico UPA") prohibits any "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce."

425.    At all relevant times, the New Mexico Subclass and Defendants were "persons" within the meaning of the New Mexico UPA. *See* N.M. Stat. Ann. § 57-12-1(A).

426.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.M. Stat. Ann. § 57-12-3 as described in the allegations above.

427.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy the Recalled Devices.

428.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs, the Class, and the New Mexico Subclass reasonably understood

72

Defendants' omissions to mean that the Recalled Devices did not contain toxic PE-PUR Foam and were not dangerous to users' health. Plaintiffs, the Class, and the New Mexico Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

429.    If Defendants had disclosed that the Recalled Devices were dangerous to consumers' health and were of substandard quality, Plaintiffs, the Class, and the New Mexico Subclass would have been aware that the Recalled Devices contained dangerous PE-PUR Foam, were dangerous to consumers' health, and were of substandard quality, and Plaintiffs, the Class, and the New Mexico Subclass would not have purchased Defendants' Recalled Devices.

430.    Plaintiffs, the Class, and the New Mexico Subclass were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for those products.

431.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impact the public interest.

432.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they inequitably enriched Defendants at the expense of Plaintiffs, the Class, and the New Mexico Subclass.

433.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices were unfair because they offend public policy, and were so oppressive that the New Mexico Subclass had little alternative but to submit, which caused consumers substantial injury.

434.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting

consumers from avoidable dangers and that the manufacturer of products is responsible for ensuring that they are safe for human use.

435.    Plaintiffs, the Class, and the New Mexico Subclass have suffered economic injury as a direct and proximate result of Defendants' conduct.

436.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

437.    Plaintiffs, the Class, and the New Mexico Subclass seek relief including, *inter alia*, injunctive relief, damages, and attorneys' fees, and costs pursuant to N.M. Stat. Ann. § 57-12-10.

## TWENTY-FIRST CLAIM FOR RELIEF

### NEW HAMPSHIRE REGULATION OF BUSINESS PRACTICES FOR CONSUMER PROTECTION ACT
#### N.H. Rev. Stat. Ann. §§ 358-A, *et seq.*, on Behalf of Carl Izzi and the New Hampshire Subclass

438.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

439.    Plaintiff Carl Izzi brings this Count individually and on behalf of the New Hampshire Subclass.

440.    New Hampshire's Regulation of Business Practices for Consumer Protection Act ("New Hampshire CPA") prohibits any "unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." *See* N.H. Rev. Stat. Ann. § 358-A:2.

441.    Among other things, the New Hampshire CPA specifically defines the following acts and representations about the subject matter of the consumer transaction as deceptive acts: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval,

74

or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) that such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not. *See* N.H. Rev. Stat. Ann. § 358-A:2.

442.    At all relevant times, Plaintiffs, the New Hampshire Subclass, and Defendants were "persons" within the meaning of the New Hampshire CPA. *See* N.H. Rev. Stat. Ann. § 358-A:1, I.

443.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce in violation of N.H. Rev. Stat. Ann. § 358-A:2 as described in the allegations above.

444.    As a result, Defendants' conduct violates several provisions of the New Hampshire CPA, including but not limited to:

(a) Section 358-A:2, V: Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

(b) Section 358-A:2, VII: Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not—as above, Defendants' Recalled Devices carried with them the impression that they were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks.

445.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce.

446.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

447.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the New Hampshire Subclass.

448.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the New Hampshire Subclass had little alternative but to submit, which caused consumers substantial injury.

449.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

450.    The New Hampshire Subclass has suffered economic injury as a direct and proximate result of the Defendants' conduct.

451.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-SECOND CLAIM FOR RELIEF

**NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**N.C. Gen. Stat. §§ 75-1.1, *et seq.*, on Behalf of Plaintiff Charles Medford, Jr.**
**and the North Carolina Subclass**

452.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

453.     Plaintiff Charles Medford, Jr. brings this Count individually and on behalf of the North Carolina Subclass.

454.     North Carolina Unfair Trade Practices Act prohibits any "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce."

455.     Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to reasonably rely upon in connection with trade or commerce in violation of N.C. Gen. Stat. § 75-1.1(a) as described in the allegations above.

456.     Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

457.     Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the North Carolina Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiff and the North Carolina Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

458.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, Plaintiffs and the North Carolina Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to their health and were of substandard quality, and Plaintiffs and the North Carolina Subclass would not have purchased Defendants' Recalled Devices.

459.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' Recalled Devices or would have paid less for the Recalled Devices.

460.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

461.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they inequitably enriched Defendants at the expense of the North Carolina Subclass.

462.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the North Carolina Subclass had little alternative but to submit, which caused consumers substantial injury.

463.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

464.    The North Carolina Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

465.    As a direct and proximate result of the foregoing acts and practices Defendant received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-THIRD CLAIM FOR RELIEF

### SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
**S.C. Code Ann. §§ 39-5-10, *et seq.*, on Behalf of Plaintiff Andrea Zeman and the South Carolina Subclass**

466.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

467.    Plaintiff Andrea Zeman brings this Count individually and on behalf of the South Carolina Subclass.

468.    At all relevant times, Plaintiffs, the South Carolina Subclass, and Defendants were "persons" within the meaning of S.C. Code Ann. § 39-5-10(a).

469.    Defendants' deceptive acts or practice described above were conducted in "trade" or "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

470.    The South Carolina Unfair Trade Practices Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. *See* S.C. Code Ann. § 39-5-20;

471.    Defendants willfully engaged in unfair, deceptive, and/or unlawful practices as described in the allegations above.

472.    Defendants' misrepresentations, omissions, and suppression of material information in the sale of the Recalled Devices are acts or practices in the conduct or trade or commerce.

473.     Plaintiffs and the South Carolina Subclass suffered loss of money as a direct and proximate result of Defendants' unfair, deceptive practices.

474.     The unfair and deceptive practices and acts by Defendants described above have impacts the public interest.

475.     Plaintiffs and the South Carolina Subclass relied on Defendants' representations in that they would not have acquired the Recalled Devices had they known that the Recalled Devices contained dangerous PE-PUR Foam

476.     As a direct and proximate result of the foregoing acts and practices Defendant received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

<u>TWENTY-FOURTH CLAIM FOR RELIEF</u>

**UTAH CONSUMER SALES PRACTICES ACT**
**Utah Code Ann. §§ 13-11-1, *et seq.*, on Behalf of Plaintiff Tyler Holzer**
**and the Utah Subclass**

477.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

478.     Plaintiff Tyler Holzer brings this Count individually and on behalf of the Utah Subclass.

479.     At all relevant times Plaintiffs, the Utah Subclass, and Defendants were "persons" within the meaning of Utah Code Ann. § 13-11-1(5).

480.     At all relevant times, Defendants were "suppliers" within the meaning of Utah Code Ann. § 13-11-1(6).

481.     Utah's Consumer Sales Practices Act ("Utah CSPA") prohibits any "deceptive act or practice by a supplier in connection with a consumer transaction" or any "unconscionable act or practice by a supplier in connection with a consumer transaction."

482. Among other things, the Utah CSPA prohibits: (1) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (2) representing that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

483. Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts they intended others to rely upon in connection consumer transactions (as defined in Utah Code Ann. § 13-11-1(2)) in violation Utah Code Ann. §§ 13-11-4(1) and 13-11-5(1) as described in the allegations above.

484. As a result, Defendants' conduct violates several provisions of the Utah CSPA, including but not limited to:

(a) Section 13-11-4(2)(a): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it does not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without unduly exposing themselves to health risks; and

(b) 13-11-4(2)(b): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendants' Recalled Devices carried with them the impression that they were sage, legally compliant products which consumers could use without unduly exposing themselves to health risks.

485. Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

486. Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Utah Subclass reasonably understood Defendants' omissions to

mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health. Plaintiffs and the Utah Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to their health and were not of substandard quality.

487.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, Plaintiffs and the Utah Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam and were of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendants' Recalled Devices.

488.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

489.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

490.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Utah Subclass.

491.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Utah Subclass had little alternative but to submit, which caused consumers substantial injury.

492.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policy of protecting

consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

493.    The Utah Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

494.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-FIFTH CLAIM FOR RELIEF

### UTAH TRUTH IN ADVERTISING ACT
**Utah Code Ann. §§ 13-11a-1,** *et seq.***, on Behalf of Plaintiff Tyler Holzer and the Utah Subclass**

495.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

496.    Plaintiff Tyler Holzer brings this Count individually and on behalf of the Utah Subclass.

497.    At all relevant times, Plaintiffs, the Utah Subclass, and Defendants were "persons" within the meaning of Utah Code Ann. § 13-11a-2(7).

498.    Utah's Truth in Advertising Act ("Utah TIAA") prohibits any "deceptive, misleading, and false advertising practices and forms in Utah." *See* Utah Code Ann. § 13-11a-1.

499.    Among other things, Utah TIAA forbids: (1) causing likelihood of confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods; (2) causing likelihood of confusion or misunderstanding as to affiliation, connection, or associations with, or certification by, another; (3) representing such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have; and (4) representing

that such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not.

500.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts as alleged above when advertising their Recalled Devices in Utah.

501.    As a result, Defendants' conduct violates several provisions of the Utah TIAA, including but not limited to:

> (a) Section 13-11a-3(e): Representing that the subject of a consumer transaction has sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that it do not have—here, Defendants' branding of the Recalled Devices carried with it the impression that the Recalled Devices were safe, legally compliant products which consumers could use without exposing themselves to health risks; and

> (b) Section 13-11a-3(g): Representing that the subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not—as above, Defendants' Recalled Devices carried with it the impression that they were, legally compliant products which consumers could use without unduly exposing themselves to health risks.

502.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are deceptive, misleading, and false advertising practices and forms in Utah that Defendants intended to induce consumers to buy Recalled Devices.

503.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Utah Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic PE-PUR Foam that could degrade and were dangerous to consumers' health. Plaintiffs and the Utah Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

504.    If Defendants had disclosed that the Recalled Devices contained toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality,

Plaintiffs and the Utah Subclass would have been aware that the Recalled Devices contained toxic materials such as PE-PUR Foam and were of substandard quality, and Plaintiffs and the Utah Subclass would not have purchased Defendants' Recalled Devices.

505.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

506.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

507.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are unfair because they inequitably enriched Defendants at the expense of the Utah Subclass.

508.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Utah Subclass had little alternative but to submit, which caused consumers substantial injury.

509.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

510.    The Utah Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct

511.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## TWENTY-SIXTH CLAIM FOR RELIEF

### VERMONT CONSUMER PROTECTION ACT
### Vt. Stat. Ann. tit. 9, §§ 2451, *et seq.*, on Behalf of Plaintiff Roger Bernier
### and the Vermont Subclass

512.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

513.    Plaintiff Roger Bernier brings this Count individually and on behalf of the Vermont Subclass.

514.    Vermont's Consumer Protection Act prohibits any "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce."

515.    Defendants willfully and purposefully engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with trade or commerce leading to damages and/or injury in violation of Vt. Stat. Ann. tit. 9, § 2453(a) as described in the allegations above.

516.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above are acts or practices in the conduct of trade or commerce that Defendants intended to induce consumers to buy Recalled Devices.

517.    Defendants' misrepresentations and omissions were likely to mislead an ordinary consumer. Plaintiffs and the Vermont Subclass reasonably understood Defendants' omissions to mean that the Recalled Devices did not contain toxic materials such as PE-PUR Foam that are dangerous to consumers' health. Plaintiffs and the Vermont Subclass also reasonably understood Defendants' omissions to mean that the Recalled Devices were not of substandard quality.

518.    If Defendants had disclosed that the Recalled Devices toxic materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, Plaintiffs and the Vermont Subclass would have been aware that the Recalled Devices contained toxic

materials such as PE-PUR Foam that are dangerous to consumers' health and were of substandard quality, and Plaintiffs and the Vermont Subclass would not have purchased Defendants' Recalled Devices.

519.    Plaintiffs and Class members were deceived by Defendants' deceptive and unfair acts and practices in that had they known the truth they would not have purchased Defendants' products or would have paid less for those products.

520.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above impacts the public interest.

521.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above is unfair because they inequitably enriched Defendants at the expense of the Vermont Subclass.

522.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair because they offend public policy, and were so oppressive that the Vermont Subclass had little alternative but to submit, which caused consumers substantial injury.

523.    Defendants' misrepresentations and omissions in the sale of the Recalled Devices detailed above were unfair in that they violate the well-established public policies of protecting consumers from avoidable dangers and that the manufacturer of medical devices is responsible for ensuring that they are safe for human use.

524.    The Vermont Subclass has suffered economic injury as a direct and proximate result of Defendants' conduct.

525.    As a direct and proximate result of the foregoing acts and practices, Defendants received, or will receive, income, profits, and other benefits which they would not have received if they had not engaged in the violations described in this Complaint.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, pray for judgment against Philips as to each and every count, including:

A.  An order certifying this action and the Class and Subclasses requested herein as a class action, designating Plaintiffs as the representatives of the Class and Subclasses, and appointing Plaintiffs' counsel as counsel to the Class and Subclasses;

B.  An order declaring that Defendants' actions constitute: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) fraudulent misrepresentation; (iv) fraud by omission; and (v) unfair and deceptive business practices in violation of Alaska, Arkansas, Delaware, Florida, Hawaii, Idaho, Iowa, Kansas, Maine, Mississippi, Missouri, New Hampshire, New Mexico, North Carolina, South Carolina, Utah, and Vermont consumer protection statutes, and that Philips is liable to Plaintiffs, members of the Class, and members of the Subclasses, as described herein, for damages arising therefrom;

C.  An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

D.  A judgment awarding Plaintiffs, members of the Class, and members of the Subclasses all appropriate damages, in an amount to be determined at trial;

E.  A judgment awarding equitable, injunctive, and/or declaratory relief as may be appropriate including, but not limited to, restitution, disgorgement, and requiring

Defendants to develop, implement, and maintain a medical monitoring program for members of the Class and Subclasses.

F.   A judgment awarding Plaintiffs, members of the Class, and members of the Subclasses prejudgment and post-judgment interest, as permitted by law;

G.   A judgment awarding Plaintiffs, members of the Class and Subclasses costs and fees, including attorneys' fees, as permitted by law; and

H.   Grant such other legal, equitable or further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury for all issues so triable.

DATED:    September 22, 2021    Respectfully submitted,

*/s/ Sean K. McElligott*
Sean K. McElligott (Mass. BBO #651710)
David S. Golub (*pro hac vice* forthcoming)
Steven L. Bloch (*pro hac vice* forthcoming)
Ian W. Sloss (*pro hac vice* forthcoming)
**SILVER GOLUB & TEITELL LLP**
184 Atlantic Street
Stamford, Connecticut 06901
Telephone: (203) 325-4491
Facsimile: (203) 325-3769
smcelligott@sgtlaw.com
dgolub@sgtlaw.com
sbloch@sgtlaw.com
isloss@sgtlaw.com

Joseph P. Guglielmo (BBO# 671410)
Erin G. Comite (*pro hac vice* forthcoming)
Alex Outwater (*pro hac vice* forthcoming)
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
Facsimile: (212) 223-6334
jguglielmo@scott-scott.com
ecomite@scott-scott.com